Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 5243 | DATE | Dec. 12, 2002 |
| CASE TITLE | Convoy Servicing Co. v Trailmobile Trailer, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ______.

(3) ☐ Answer brief to motion due______. Reply to answer brief due______.

(4) ☐ Ruling/Hearing on ______ set for ______ at ______.

(5) ☐ Status hearing

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(7) ☐ Trial[set for/re-set for] on ______ at ______.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ______ at ______.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]

Memorandum opinion and order entered. Accordingly, defendant's motion to dismiss as to count I is granted, and defendant's motion to dismiss as to count VI is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | 19 |
| X | Notices mailed by judge's staff. | DEC 13 2002 date docketed | |
| | Notified counsel by telephone. | CD docketing deputy initials | |
| | Docketing to mail notices. | date mailed notice | |
| | Mail AO 450 form. | mailing deputy initials | |
| | Copy to judge/magistrate judge. | | |

| GDS | courtroom deputy's initials | Date/time received in central Clerk's Office |
|---|---|---|

U.S. DISTRICT COURT CLERK
02 DEC 12 PM 3:48
FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CONVOY SERVICING COMPANY, d/b/a Thermo King of Dallas, | ) | |
| Plaintiff, | ) | No. 02 C 5243 |
| v. | ) | Judge Robert W. Gettleman |
| TRAILMOBILE TRAILER, LLC, TRANSPORT INDUSTRIES, L.P., EDWARD I. WANANDI, BRUCE R. BLACK, BYRDELL C. GOLDSMITH II and WILLIAM C. DAILEY, | ) | |
| Defendants. | ) | |

DOCKETED
DEC 13 2002

**MEMORANDUM OPINION AND ORDER**

Plaintiff Convoy Servicing Company filed an eleven count complaint against Trailmobile Trailer LLC ("Trailmobile"), Transport Industries, L.P. ("T.I."), Bridgeford Foods (Bridgeford and T.I. together, the "end users"), and Trailmobile's officers, Edward I. Wanandi, Bruce R. Black, Byrdell C. Goldsmith, II and William C. Dailey. All counts arise out of an agreement under which plaintiff supplied refrigeration units to trailers sold by Trailmobile to T.I. and Bridgeford. Trailmobile has moved to dismiss Count I (Texas' Constitutional Materialman's Lien) and Count VI (unjust enrichment) arguing that the Materialman's Lien does not apply to proceeds as a matter of law, and that the unjust enrichment count cannot survive because an express contract defined the parties' relationship. For the reasons set forth below, the motion to dismiss is granted as to Count I and denied as to Count VI.

19

**Allegations**

For nearly forty years, plaintiff, a refrigeration unit supplier in Dallas, Texas, collaborated with Trailmobile in the manufacturing of refrigerated trailers. Trailmobile, headquartered in Northbrook, Illinois, manufactures trailers for commercial buyers. In the spring and summer of 2001, plaintiff contracted with T.I., a Texas trucking company, to supply 30 refrigeration units for trailers manufactured by Trailmobile. In the summer of 2001, plaintiff contracted with Bridgeford, a Texas food distributor, to supply three units for trailers manufactured by Trailmobile.

For tax purposes, industry practice is that the refrigeration unit supplier contracts directly with the end user, the end user pays the trailer manufacturer directly, and the trailer manufacturer then remits payment to the refrigeration unit supplier. Under this arrangement, plaintiff's payment is entrusted to Trailmobile by the end users. The complaint alleges that, "[a]s an accommodation to the end users, invoices reflecting the cost of the trailers, with the refrigeration units included, were issued to the end users by [Trailmobile] and payments were made by the end users to [Trailmobile]." It is unclear from the complaint whether this arrangement is solely implied based on industry practice or was expressed in a written contract. While the complaint describes contracts between plaintiff and the end users, it describes only "arrangements" and "agreements" between plaintiff and Trailmobile. The only invoices mentioned in the complaint are invoices sent from Trailmobile to the end users.

Trailmobile delivered the trailers to Bridgeford and T.I. in the summer and fall of 2001. Plaintiff alleges on information and belief that both T.I. and Bridgeford made full payments to Trailmobile for all trailers. Trailmobile paid plaintiff for one of T.I.'s trailers, and one of

Bridgeford's trailers. On December 12, 2001, Trailmobile voluntary filed for Chapter 11 bankruptcy.

**Discussion**

For purposes of a motion to dismiss, the court accepts the factual allegations of the complaint as true and draws all reasonable inferences in favor of plaintiff. See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423 (7th Cir. 1996). When ruling on a motion to dismiss for failure to state a claim, the court considers, "whether relief is possible under any set of facts that could be established consistent with the allegations." Bartholet v. Reishauer A.G., 953 F.2d 1073, 1078 (7th Cir. 1992). A claim may be dismissed only if it is beyond doubt that under no set of facts would plaintiff's allegations entitle it to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The purpose of a motion to dismiss is to test the sufficiency of complaint, not to decide its merits. See Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990).

Trailmobile argues that: (1) Count I fails as a matter of law because Texas' Constitutional Material Men's Lien does not apply to proceeds; and (2) Count VI fails because under both Texas and Illinois law unjust enrichment cannot exist when there is an express contract.

Count I—Texas' Constitutional Materialman's Lien

In Count I, plaintiff claims a materialman's lien on the proceeds held by Trailmobile from the sale of the refrigeration units. Trailmobile argues that plaintiffs fail to allege a claim because: (1) no case has granted the constitutional lien on proceeds; and (2) the plain language of the Texas Constitution does not expressly include proceeds. Because the Texas courts have

interpreted the constitutional materialman's lien narrowly, and Art. 16 § 37 does not expressly include proceeds, defendants motion to dismiss Count I is granted.

When this court exercises supplemental jurisdiction it must apply state law to substantive issues. Timmerman v. Modern Indus., Inc., 960 F.2d 692, 696 (7th Cir. 1992). The court must determine the content of state law as that state's supreme court would determine it. Allstate Ins. Co. v. Menards, Inc., 285 F.3d 630, 636 (7th Cir. 2002) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). Without clear guidance from the Texas Supreme Court, this court must use its best judgment to make this determination, and may consider the decisions of lower Texas courts and courts of other jurisdictions. Stephan v. Rocky Mountain Chocolate Factory, Inc., 129 F.3d 414, 417 (7th Cir. 1997). This court is not bound, however, by the decision of any particular Texas appellate court; the issue is the content of state law at the "state, not the local, level." Allstate Ins. Co, 285 F.3d at 636. Therefore, this court, sitting in diversity in the Northern District of Illinois, must attempt to predict how the Texas Supreme Court would interpret a unique state constitutional provision. Specifically, Article 16 § 37 of the Texas Constitution provides:

> Mechanics, artisans and material men of every class, shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefore and the legislature shall provide by law for the speedy and efficient enforcement of said liens.

While this is one of seven constitutional liens in the country, it is the only self-executing such lien. A & M Operating Company, Inc. v. South Coast Supply Company, Inc., 182 B.R. 997, 1000 (E.D. Texas 1995). Under the Texas Constitution, the materialman's lien is automatic, without notice. Id.

The constitutional provision is generally viewed as a back-up for creditors that fail to file a statutory lien. See Woodward, The Constitutional Lien on Chattels in Texas, 28 Texas Law Rev. 305, 315 (1950); see also In Re Ernest and Associates, Inc., 59 B.R. 495, 497 (W.D. Tex. 1985) (holding that while a debtor in possession could not have avoided a statutory lien, it could avoid the constitutional lien). Consequently, the scope of the lien has been limited by Texas courts. A & M, 182 B.R. at 1000-1001. The limitations have included: requiring privity, First Nat'l Bank of Paris v. Lyon-Gray Lumber Co., 194 S.W. 1146 (Tex.Civ.App.—Texarkana 1917), aff'd 110 Tex. 162, 217 S.W. 133 (1919); eliminating subcontractors as possible lien holders, Da-Col Pain MFG. Co. v. American Indemnity Co., 517 S.W.2d 270, 273 (Tex. 1974); freeing subsequent innocent purchasers from the lien, Wood v. Barnes, 420 S.W.2d 425, 429 (Tex.Civ.App.—Dallas 1967, writ ref'd n.r.e.); and limiting the lien to only "a debtor who owns the article or building." A & M, 182 B.R. at 1001.

Trailmobile does not own or possess the trailers upon which plaintiff is claiming a materialman's lien. The issue is whether the proceeds from the sale of those trailers are an "article or building" under the Texas Constitution. Texas courts have interpreted the phrase "article or building" narrowly, excluding items such as refrigerators and ranges, First Nat. Bank in Dallas v. Whirlpool Corp., 517 S.W.2d 262, 266 (Tex. 1975), machinery in a factory not permanently fixed to the property, Lyon-Gray Lumber Co. v. Nocona Cotton Oil Co., 194 S.W. 633, 635 (Tex.Civ.App. 1917), and ceiling fans sold to a tenant who installed them in his leased property and then left the property. Campbell v. Teeple, 373 S.W. 304, 307 (Civ.Ap.. 1925). No Texas court has included proceeds within the definition of "article or building".

It is true, as plaintiff argues, that there are no cases that have expressly held that the materialman's lien does not attach to proceeds. Several rulings have by implication, however, excluded proceeds. See e.g. Lambert v. Williams, 21 S.W. 108, 110 (Tex.Civ.App. 1893) (holding that as a matter of law a lien cannot include property on which work had not been done); see also Black, Sivalls & Bryson, Inc. v. Operator's Oil & Gas Co., 37 S.W.2d 313, 316 (Texas Ct. App. 1931) (holding the lien extends only to articles prepared by the creditor); see also R.B. Spencer & Co. v. Biggers, 108 S.W.2d 268, 270 (Texas Ct. App. 1937) (holding the lien attached to property, not rents from the property).

Plaintiff's reliance on the general statement in In re Tazewell County Collector, 130 Ill. App. 3d 77, 78 (3rd Dist. 1985), that "[a] lien on property follows the property if moved, unless sold to an innocent purchaser, in which case the lien follows the proceeds of the sale," is misplaced for a number of reasons. First, in Tazewell the lien in question ( a tax lien) was on a residence, and the court held merely that the lien "followed" the residence when its location was moved, because the residence had not be "substantially destroyed." There was no issue of a sale to an innocent purchaser and the "following" of proceeds. Id. at 77-78. Second, the case on which Tazewell relied for this statement, Marshall Savings and Loan Ass'n v. Chicago National Bank, 56 Ill. App. 2d 372 (2d Dist. 1965), involved proceeds of a foreclosure sale, and was later overruled, leaving it of questionable value. See Cole Taylor Bank v. Cole Taylor Bank, 224 Ill. App. 3d 696 (1st Dist. 1992). Finally, the case on which Marshall relied, Elgin Lumber Co. v. Langman, 23 Ill. App. 250 (2d Dist. 1886), stated only "that in order to do justice equity will frequently treat the money derived from property as it would the property itself and follow it as long as it can be followed." Id. In Elgin, the plaintiff had a statutory lien on lumber and

materials furnished to defendant Utman and used in the construction of a house on a lot owned by Utman. Prior to completion, the house was destroyed by fire. Proceeds from an insurance policy were deposited with the court which had before it the issue of who was insured under the policy and the priority of the plaintiff's lien versus a mortgage lien. Id. Elgin, did not involve the question in the instant case, which under plaintiff's theory would require the court to hold generally that a self executing statutory (or constitutional) materialman's lien converts to an equitable lien and follows the proceeds of the sale of the property to which the statutory lien originally attached. This court can find no case suggesting that the Texas Supreme Court would so hold and, therefore, declines to do so.

Consequently, because the general trend of Texas courts has been to limit the scope of Art. 16 § 37, because the plain language of the Constitution applies liens only to "article[s] or building[s]," and because Texas courts have implicitly excluded proceeds, defendant's motion to dismiss as to Count I is granted.

Count VI—Unjust Enrichment

Trailmobile argues that plaintiff's unjust enrichment count fails because under both Illinois and Texas law there cannot be a claim for unjust enrichment when there is an express contract between the parties. However, there is a slight difference in Illinois and Texas law. Consequently, prior to evaluating plaintiff's unjust enrichment claim, the court must determine if the law of Illinois or the law of Texas applies.

A federal court exercising diversity jurisdiction applies the choice of law doctrines of the state in which the court sits. See ECHO, Inc. v. Whitson Co., 52 F.3d 702, 706 (7th Cir. 1995) (citing Klaxon v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S. Ct. 1020, 85 L.Ed. 1477 (1941)).

"Ordinarily, Illinois follows the Restatement (Second) of Conflict of Laws (1971) in making choice-of-law decisions." Chapman and Associates, Ltd. v. Kitzman, 193 Ill.2d 560, 739 N.E.2d 1263, 1269, 251 Ill.Dec. 141 (2002) (using Restatement (Second) Conflict of Laws §§ 6 and 221). Under § 221 of the Restatement, the court applies the law of the forum that has the most significant relationship to the parties and the occurrence. According to the Restatement, the following factors may be considered according to their importance with respect to the issue before the court:

> (a) the place where the relationship between the parties was centered, provided that the receipt of the enrichment was substantially related to the relationship;
> (b) the place where the benefit or enrichment was done;
> (c) the place where the act conferring the benefit or enrichment was done;
> (d) the domicile, residence, nationality, place of incorporation and place of business of the parties; and
> (e) the place where the physical thing, such as the land or chattel, which was substantially related to the enrichment, was situated at the time of the enrichment

Every factor points to Texas as the forum with the most significant relationship to the parties and the occurrence. Other than Trailmobile, every party is located in Texas. The refrigeration units were incorporated into the trailers in Texas and sold to Texas corporations. The express contract for the sale of the refrigeration units actually occurred between plaintiff, a Texas corporation, and the end users, both Texas corporations. Therefore, Texas' law on unjust enrichment will be applied.

Under Texas law, unjust enrichment applies when for one reason or another the rights of the parties are not governed by a contract. See Lone Star Steel Co. v. Scott, 759 S.W.2d 144, 154 (Tex. App.—Texarkana). When a defendant has been unjustly enriched by the receipt of benefits in a manner not governed by contract, the law implies a contractual obligation upon the

defendant to restore the benefits to the plaintiff. Barrett v. Ferrel, 550 S.W.2d 138, 143 (Tex.Civ.App.—Tyler 1977). Recovery under principles of unjust enrichment is also appropriate when a contemplated agreement is unenforceable, impossible, not fully performed, thwarted by mutual mistake, or void for other legal reasons. City of Harker Heights v. Sun Meadows Land, Ltd., 830 S.W.2d 313, 319 (Tex.App—Austin 1992). Unjust enrichment generally is unavailable when a valid, express contract governing the subject matter of the dispute exists. Woodward v. Southwest States, Inc., 384 S.W.2d 674, 675 (Tex. 1964).

However, under Texas law, the existence of an express contract is not an absolute bar. See e.g. Staats v. Miller, 150 Tex. 581, 243 S.W.2d 686, 687-88 (1951) (allowing restitution for excess money held by defendant after selling plaintiffs' equipment pursuant to an oral contract); Bowers v. Missouri, Kan & Tex. Ry. Co., 241 S.W. 509, 510-11 (Tex.Civ.App.—Texarkana 1922) (allowing restitution for freight charges paid in excess of rates specified in a shipping contract); see also Gulf Oil Corp. v. Lone Star Producing Co., 322 F.2d 28, 31-33 (5th Cir. 1963) (holding that the plaintiff could recover money mistakenly paid in excess of the contract price); Natural Gas Pipeline Co. v. Harrington, 246 F.2d 915, 921 (5th Cir. 1957) (holding that a gas company was entitled to restitution of the difference between the contract rate and the price paid under an invalid rate order set by regulatory board). The question under Texas law is not just whether a valid express contract exists, but whether that contract covers the issue being litigated. Fortune Production Co. v. Conoco, Inc., 52 S.W.3d 671, 677, 44 Tex.Sup.Ct.J. 97 (2002). When a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement. Id.

Consequently, the questions to be asked are: (1) was there an express contract between plaintiff and Trailmobile; (2) is it valid; and (3) did it cover the subject matter being litigated. It is unclear from the allegations, and the briefs themselves, whether there was ever an actual express contract between plaintiff and Trailmobile, or whether there was simply an implied relationship based on industry practice and arising out of the express contracts between plaintiff and the end users and Trailmobile and the end users.

The complaint itself alleges only arrangements and agreements between plaintiff and Trailmobile to collaborate in the building of the refrigerated trailers. Specifically, paragraph 15 of the complaint states:

> Pursuant to industry standard, [plaintiff] would contract directly with the end user for the sale of refrigeration units. In most cases, the agreement between [plaintiff] and the end user would take place prior to the end user's selection of trailer manufacturer. Upon an end user's selection of [Trailmobile] as the trailer manufacturer, [Trailmobile] would enter into an agreement with the end user for the sale of refrigerated trailers, and [Trailmobile] and [plaintiff] would make arrangements between them for the installation of the refrigeration units and delivery of the refrigerated trailers to the end user.

Taking all reasonable inferences in favor of plaintiff, it is unclear whether there was an express contract between plaintiff and Trailmobile that covered the subject matter being litigated—the funds being held by Trailmobile that were owed to plaintiff.

As plaintiff points out, even if there is an express contract, plaintiff can plead in the alternative. Fed. R. Civ. P. 8(e)(2). Plaintiff cannot recover under inconsistent theories, but may plead inconsistent theories in the alternative. Id. Because the court cannot determine at this stage whether an express contract covered the subject matter being litigated, defendants motion to dismiss as to Count VI is denied.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss as to Count I is granted, and defendant's motion to dismiss as to Count VI is denied.

**ENTER: December 12, 2002**

**Robert W. Gettleman**
**United States District Judge**